UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                                                                                                                     :

HARRY TRAN, SUN FRESH PRODUCE, INC.,      :      03 CV 0355 (ARR)(KAM)
(formerly WORLD FARM, INC.), SITHOL YIN, and  :
SON YENG PRODUCE, INC.,                         :      <u>NOT FOR</u>
                                                                                       :      <u>ELECTRONIC OR</u>
                    Plaintiffs,                            :      <u>PRINT PUBLICATION</u>
                                                                                            :

   -against-                                                               :      <u>OPINION AND ORDER</u>

STEVE S. VUONG,

                    Defendant.
------------------------------------------------------------------ X
ROSS, United States District Judge:

      Plaintiffs, Harry Tran, Sun Fresh Produce, Inc., Sithol Yin, and Son Yeng Produce, Inc. commenced this lawsuit on January 20, 2003, alleging that they were defrauded out of approximately $1,000,000 by defendant, Steve Vuong. Defendant moved to dismiss the complaint; that motion was denied on June 2, 2003. Plaintiffs filed an amended complaint on April 1, 2005. In that complaint, plaintiffs allege five claims: (1) fraud; (2) breach of contract; (3) mistake and rescission; (4) conversion; and (5) unjust enrichment. Defendant now moves for summary judgment dismissing the amended complaint. Plaintiffs move for summary judgment on their mistake and rescission, and conversion claims.

      As is evident from the following recitation, although the parties are in agreement with respect to a limited number of facts, most are hotly disputed.

# FACTS

Plaintiff Yin is an American Citizen who emigrated from Cambodia to the United States approximately fifteen years ago. Yin Aff. ¶ 4. Yin owns a wholesale fresh produce business known as Son Yeng Produce, Inc. Id. Plaintiff Harry Tran is an American Citizen who emigrated from Vietnam to the United States over twenty-years ago, and is the owner and president of World Farm, a wholesale fresh produce business. Id. Yin and Tran are brothers-in-law. Id. Defendant Steve Vuong is a Vietnamese immigrant who also works in the wholesale fresh produce business. Vuong Aff. ¶ 7; Yin Aff. ¶ 5. From 1999 to 2002, Vuong operated Ting Fong LLC, another wholesale produce business. Vuong Dep. at 16; Vuong Aff. ¶¶ 13-15; Yin Aff. ¶ 5. Although Vuong denies ever representing that he was the owner or sole shareholder of Ting Fong, Vuong Dep. at 76-77, 196 (asserting that he told plaintiffs that he would have to buy out the other Ting Fong shareholders before contributing any of Ting Fong to the joint venture), plaintiffs assert that Vuong represented that Ting Fong was his business, Yin Aff. ¶ 8, and that he never told them he had any partners in that business. See Yin Aff. ¶ 5; Yin Dep. 92, 148; Yin Cont. Dep. at 41; 58.

In May 2002, plaintiffs and defendant met to discuss the possibility of forming a new wholesale produce business. Yin Aff. ¶ 7; Vuong Aff. ¶ 16. According to Yin, Vuong represented that he would contribute his existing business, Ting Fong, together with all of its assets, Yin Aff. ¶ 8, although, as noted, Vuong disputes ever representing himself as sole owner of Ting Fong. Vuong Dep. at 76-77, 196. The parties agree that at the May meeting, Vuong provided plaintiffs with a list of the "Total Assets of Ting Fong LLC" (the "asset list"). Yin Aff.

¶ 7; Vuong Aff. ¶ 17.  "Nueva Generacion Agricola in Cortaza, Mexico" ("Nueva Generacion")[1] was among the assets on that list.  Vuong Aff. Ex. D.  The parties also agree that at the initial meeting, Yin and Vuong engaged in extended discussions concerning the items on the asset list, Def. 56.1 Stmt. ¶ 20; Pl. Resp. to Def. 56.1 Stmt. ¶ 20, and Vuong provided plaintiffs with a series of handwritten notes reflecting various expenses and costs that would be incurred by the new business.  Def. 56.1 Stmt. ¶ 20; Pl. Resp. to Def. 56.1 Stmt. ¶ 20.

Yin attests, and Vuong denies, that Vuong provided plaintiffs with business cards reflecting that he was the president of Nueva Generacion.  Yin Aff. ¶ 8.  Defendant attests that at the initial meeting, on a copy of the Ting Fong asset list, he made a notation indicating that Nueva Generacion's warehouse was leased, rather than owned, and placed checkmarks next to a subset of the listed assets, and that he gave that marked-up copy to plaintiffs.  Vuong Aff. ¶ 14, Ex. G; Vuong Dep. at 102-03.  Plaintiff Yin testified that Vuong did not give him a marked-up copy, but rather gave each attendee a clean copy of the list and, each individual "probably did some marking."  Yin Aff. at 100-102.

Plaintiffs assert that they agreed to invest in and form J & S Produce based on Vuong's representations that he or Ting Fong owned Nueva Generacion,[2] including the appearance of

---

[1]Plaintiffs assert their understanding that Nueva Generacion is a farm in Cortaza, Mexico. Yin Aff. ¶ 8.  According to Vuong, however, Nueva Generacion is not a farm, but rather a produce processing, packing and shipping facility.  Vuong Aff. ¶ 20.  The court need not resolve, nor even consider, this dispute, as the proper classification of the entity has no bearing on the outcome of the instant motions.

[2]Although Plaintiffs repeatedly allege that defendant Vuong owns Nueva Generacion, Nueva Generacion is listed on the asset list as an asset of Ting Fong.  It may be, therefore, that plaintiffs, who assert their understanding that Vuong was the sole shareholder of Ting Fong, actually believed that Ting Fong owned Nueva Generacion.

3

Nueva Generacion on the Ting Fong asset list. It was specifically due to "[t]he opportunity to gain an ownership interest in the Mexican and Delaware farms" plaintiffs attest, that they were willing to make such a large investment. Yin Aff. ¶ 11. "Without Vuong's representations that he owned and was contributing . . . Nueva Generacion," Yin states, "[plaintiffs] would never have invested in J & S." Id. Vuong denies ever representing that he or Ting Fong owned Nueva Generacion, maintaining that Ting Fong and Nueva Generacion were separate, independently owned entities. Vuong Aff. ¶ 24.

Subsequent to this meeting, in May and June 2002, plaintiffs Yin and Tran engaged in some due diligence concerning the items on the asset list, requesting records from defendant regarding the assets and business of Ting Fong. Def. 56.1 Stmt. ¶ 21; Pl. Resp. to Def. 56.1 Stmt. ¶ 21. The three men also traveled together to the Nueva Generacion facility, in Mexico, Yin Aff. ¶ 9; Vuong Dep. at 206, where plaintiffs assert, and Vuong denies, Vuong Dep. at 206, that Vuong repeatedly reaffirmed that the entity belonged to him and that he controlled it. Yin Aff. ¶ 9. During those trips, according to plaintiffs, Vuong was treated as the owner and boss of Nueva Generacion. Id.

Plaintiffs attest, and defendant appears to dispute, that during June, July, and August, plaintiffs invested approximately $1,033,500 in J&S. Yin Aff. ¶ 12. The parties agree that Yin personally handed Vuong $410,000 cash in three installments: $120,000 on June 19, 2002; $180,000 on June 21, 2002; and $110,000 on July 8, 2002. Yin Aff. ¶ 8; Def. 56.1 Stmt. ¶ 26. Vuong asserts that he used this money, pursuant to an oral agreement with plaintiff, to buy out the interests of Vuong's partners in Ting Fong. Def. 56.1 ¶ 27. Yin attests that he never agreed, either orally or in writing, that Vuong could use any portion of his investment for this purpose,

4

Pl. Resp. to Def. 56.1 ¶ 27; Yin Aff. ¶ 22, and that, at the time he gave Vuong this money, he believed Vuong to be the sole owner of Ting Fong. Yin Aff. ¶ 22. The parties further agree that plaintiffs, at Vuong's direction, paid checks to Nueva Generacion and various third parties. Yin Aff. ¶ 22; Def. 56.1 ¶ 28-29. Plaintiffs assert that these checks, which were drawn on the accounts of World Farm and Song Yeng Produce, totaled $575,998.73. Yin Aff. ¶ 22. Vuong asserts the checks totaled approximately $350,000. Def. 56.1 Stmt. ¶ 29.

Plaintiffs hired an attorney to prepare a document memorializing the agreement between the parties.[3] Yin Aff. ¶ 16; Def. 56.1 ¶ 30-31. On September 5, 2002, the parties executed the contract, titled "Operating Agreement of Limited Liability Company Kwown [sic] as J & S Produce, L.L.C." ("Operating Agreement"). Yin Aff. ¶ 16; Vuong Aff. ¶ 33. The Operating Agreement required Yin to contribute currency or a promissory note of $750,000 to the venture on or before August 31, 2002. Capital contributions required by Vuong under the Operating Agreement were: (1) sublease of 19 Anthony Street, Brooklyn, New York to the venture; (2) title to a 1993 Volvo; (3) title to a Cushion Ice Forklift; (4) $200,000 or any and all proceeds from the sale of the Delaware farm; and (5) use of the registered names Shao Lin, New Generation, and New Century. Yin Aff. Ex. D at 29. The Operating Agreement makes no reference to Nueva Generacion. Yin Aff. Ex. D.

---

[3]Plaintiffs attest that throughout the summer of 2002, plaintiffs repeatedly asked Vuong, who was supposed to be managing the new venture, for an explanation of how the business was operating, an accounting, and a profit and loss statement. Yin Aff. ¶ 15. In each instance, they assert, Vuong resisted, refusing, among other things, to provide any documentation for the deposit or disposition of the $410,000 in cash given to him by Yin. Id. Plaintiffs also attest that Vuong never provided documentation from Vuong reflecting his, Ting Fong's, or J&S's ownership of Nueva Generacion. Id. It was because they had become nervous about their large investment and the lack of agreement memorializing the terms of the deal, plaintiffs state, that they sought an attorney to draft an agreement. Yin Aff. ¶ 16.

5

Both parties attest that they did not fully read or understand the Operating Agreement before they signed it. Yin asserts that although he signed the Operating Agreement, due to his difficulty reading English and the fact that no translator was present, he was unable to fully read and understand document prior to signing. Yin Aff. ¶ 6. Vuong testified that he did not see the Operating Agreement before September 5, and that he only briefly looked it, "turn[ing] from one page to the other, but . . . not really look[ing] at the contents," prior to signing. Vuong Dep. at 59-61. He further asserted that he understood some of the contract terms, but not others, that he did not discuss the document in detail with Ms. Mock, and that he did not review the Operating Agreement with any other attorney. Vuong Dep. at 61-63.

## DISCUSSION

A.      Standard of Review for Summary Judgment

Under Rule 56, summary judgment is proper if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc.56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins.

Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.2d 1219, 1223 (2d Cir. 1994).

B.   Mistake and Rescission (Third Claim)

Both parties move for summary judgment on plaintiffs' mistake and rescission claim. Plaintiffs allege that the Operating Agreement was entered into under either a mutual mistake by the parties or multiple unilateral mistakes by plaintiffs. Accordingly, they argue, the Operating Agreement must be rescinded. Defendant argues that plaintiffs' mistake and rescission claim is frivolous and should be dismissed.

*1.  Mutual Mistake*

First, plaintiffs argue for rescission due to mutual mistake.  Rescission of a contract entered into under mutual mistake is warranted if the parties "shared the same erroneous belief as to a material fact, and their acts did not in fact accomplish their mutual intent." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40 (2d Cir. 1991).  For such relief to be granted, the mistake in question "must exist at the time the contract was entered into . . . and must be substantial." Ryan v. Boucher, 144 A.D.2d 144, 534 N.Y.S.2d 472 (3d Dep't 1988) (citations omitted).  A claim for rescission of a contract based on mutual mistake must be dismissed if the parties do not share a substantially similar erroneous belief as to the facts.  Yurman Design, Inc. v. Garden Jewelry Manufacturing Corp., No. 99 Civ. 10507, 2003 WL 22047896 (S.D.N.Y. Aug. 29, 2003) (citations omitted) (dismissing mutual mistake claim where plaintiff believed scope of settlement agreement limited whereas defendant believed settlement agreement conferred broader rights); see also Healy v. Rich Prods. Corp., 981 F.2d 68, 73 (2d Cir. 1992) (affirming district court finding that parties' different views as to meaning of contract provision did not establish mutual mistake); Apple Corps Limited v. Sony Music Entertainment, Inc., No. 91 Civ. 7465, 1993 WL 237362 (S.D.N.Y. July 14, 1993) (no mutual mistake where parties had different beliefs as to meaning of contract provision).

In the instant case, no reasonable juror could find that the parties shared an erroneous belief as to a particular material fact.  Plaintiffs allege that they did not understand the Operating Agreement, in part due to a language barrier.  They cannot, however, point to a mistake as to a specific material fact harbored by both parties upon execution of the agreement.

Plaintiffs' main allegation is that they believed the Operating Agreement reflected their understanding that Vuong owned a Mexican farm named Nueva Generacion, and that he was required to contribute that asset to J & S. Their own mistake as to this fact, however, is insufficient to establish mutual mistake. There is no evidence in the record that Vuong believed he was contributing ownership of Nueva Generacion; in fact, the record clearly establishes Vuong's belief that he did not own Nueva Generacion at all, but merely had a relationship that allowed him to secure produce from that company. Vuong Aff. ¶ 19, 25; Vuong Dep. at 42-43. Vuong testified that he was never an employee, officer, or owner of Nueva Generacion. Vuong Dep. at 207. In light of defendant's attestations that he was not contributing Nueva Generacion to the parties' joint venture, plaintiffs' mistaken belief that he owned and was contributing that entity to the joint venture cannot constitute a mutual mistake upon which rescission can be granted.

Plaintiffs next allege mutual mistake because the Operating Agreement lists plaintiffs' expected capital contribution as $750,000, whereas they had already contributed close to $1,000,000 to the venture. Plaintiffs do not contest, however, that even under the oral agreement, they were expected to contribute $750,000, an amount equal in value to Vuong's asset list. Yin Dep. at 50, 63; Yin Cont. Dep. at 48. That plaintiffs may have voluntarily contributed more than this does not constitute a mistake upon which the contract may be rescinded. Moreover, the record does not support plaintiffs' allegation that Vuong was under the same mistaken belief that the Operating Agreement accounted for the $1,000,000 allegedly contributed by plaintiffs. In fact, Vuong testified that he knew that plaintiffs had contributed $410,000 in cash, but that at the time the agreement was signed he did not know the value of

9

plaintiffs' total contributions. Vuong Dep. at 66-68. Although Vuong knew that Yin had paid third parties for seeds, transportation and refrigerators, he did not know the value of such payments, and plaintiffs deposited no money into J & S bank accounts. Id.

Finally, plaintiffs allege that the absence of a written provision allowing Vuong to use Yin's investment to buy out Vuong's Ting Fong partners evidences another mutual mistake. Plaintiffs attest that they did not grant Vuong permission to use part of their investment to buy out his Ting Fong partners. Yin Aff. ¶ 22. Accordingly, they cannot claim that they expected such a provision to be reflected in the Operating Agreement. Moreover, although Vuong believed he had reached an oral agreement with plaintiffs that he would use part of their investment to buy out his Ting Fong Partners, he knew it was not encompassed in the operating agreement. Vuong Dep. at 76-77, 196. Although the parties have different recollections as to whether they agreed that plaintiffs' money could be used for this purpose, neither believed it was a provision of the operating agreement; and, in fact, it was not. Moreover, the mere fact that the parties hotly dispute whether there existed an agreement that defendant could use plaintiffs' investment for this purpose establishes that no reasonable fact finder could conclude that the parties were under a mutual mistake of fact on this point. Because there is no evidence in the record supporting rescission of the Operating Agreement on the basis of mutual mistake, defendant is granted summary judgment dismissing this aspect of plaintiffs' rescission claim.

   2.   *Unilateral Mistake*

Plaintiffs next argue that no reasonable juror could find the contract enforceable because it was entered into pursuant to a unilateral mistake. Under New York Law, unilateral mistake exists when "'the parties have reached an agreement, and, unknown to one party but known to

the other, who has misled the first, the subsequent writing does not properly express the agreement.'" Winmar v. Teachers Ins. And Annuity Assoc. Of America, 870 F.Supp. 524, 535 (S.D.N.Y. 1994) (quoting Chimart Assocs. v. Paul, 66 N.Y.2d 570, 498 N.Y.S.2d 344, 346-47 (1886)). "A party's unilateral mistake will not provide a basis for rescission unless it is accompanied by some fraud committed by the other contracting party." Aetna Casualty and Surety Co. v. Aniero Concrete Co., 404 F.3d 566, 585 (2d Cir. 2005) (citing National Union Fire Ins. Co. v. Walton Ins. Ltd., 696 F.Supp. 897, 902 (S.D.N.Y. 1988) ("Unilateral mistake without fraud or wrongful conduct, however, is not a sufficient ground for contract rescission or reformation."); Brandwein v. Provident Mutual Life Ins. Co., 3 N.Y.2d 491, 168 N.Y.S.2d 964, 967, 146 N.E.2d 693 (Ct. App. 1957) ("classic" grounds for reformation of contract are "mutual mistake of the parties" or "mistake on plaintiff's part and a fraud by defendant")). To rescind a contract because of unilateral mistake, therefore, the plaintiff must show "misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by an the aggrieved party." Allen v. Westpoint-Pepperell, 945 F.2d 40, 44 (2d Cir. 1991). After reviewing the record, the court concludes that there is a question of fact as to whether Vuong represented that he or Ting Fong owned Nueva Generacion.

Plaintiffs attest that Vuong represented that Ting Fong owned Nueva Generacion. According to Yin, Vuong continually touted his ownership and control of Nueva Generacion, Yin Aff. ¶ 9, and he was treated as the owner and boss of Nueva Generacion on their joint trips to the facility. Id. Further, plaintiffs attest that Vuong gave them business cards identifying him as president of Nueva Generacion. Id. ¶ 8; see Yin Aff. Ex. B. Plaintiffs also rely on the asset list provided by Vuong listing Nueva Generacion as an asset of Ting Fong. Yin Aff. Ex. A.

11

"Without Vuong's representations that he owned and was contributing . . . Nueva Generacion," Yin attests, "[plaintiffs] would never have invested in J & S." Yin Aff. ¶ 11.

Evidence submitted by defendant, however, contradicts the facts asserted by plaintiffs. First, and most importantly, defendant denies representing that Ting Fong owned Nueva Generacion. He also denies having given plaintiffs the business cards listing him as president, explaining that although they had been given to him by Nueva Generacion to find buyers for them, he had never distributed the cards. Vuong Dep. at 46. Further, he attests that plaintiffs were in possession of another copy of the Ting Fong asset list on which defendant had clearly indicated that Nueva Generacion did not own, but rather leased, its warehouse in Mexico, calling into question plaintiffs' argument that they relied on the asset list to their detriment. Vuong Aff. ¶ 14, Ex. G. Finally, Vuong contests plaintiffs report as to their Mexican trips, attesting that he introduced plaintiffs to the owners of Nueva Generacion rather than purporting to be the owner himself. Vuong Dep. at 206. Based on the current record, a finder of fact could choose to credit either party's account, and thus summary judgment is improper.

Alternatively, defendant seems to argue that prior to signing the Operating Agreement, plaintiffs, through due diligence, came to understand that Ting Fong did not own Nueva Generacion, but chose to invest anyway. Accordingly, defendant argues, plaintiffs did not rely upon any representations he may have made. The existence of material, disputed facts about whether plaintiffs had access to information clearly establishing that Ting Fong did not own Nueva Generacion undermines defendant's argument that, as a matter of law, plaintiffs could not

have relied on any representation by Vuong.[4] Specifically, the documents Vuong cites do not support his claim that plaintiffs could not have relied on any representation by him regarding ownership of Nueva Generacion.[5] Vuong asserts that plaintiffs demanded documents corroborating his representations that Ting Fong owned the items enumerated on the asset list. Although plaintiffs concede attempting to obtain records pertaining to Nueva Generacion, they attested that they received only invoices and related records for certain vehicles owned by that company. Yin Aff. ¶ 15; Yin Dep. at 125; See Vuong Aff. Ex. G. These records shed no light on Nueva Generacion's ownership structure, and therefore neither undermine nor support defendant's alleged representations that Ting Fong owned Nueva Generacion. Further, Yin

---

[4]Defendant does not appear to argue that plaintiffs had a duty to exercise due diligence to uncover the truth behind Vuong's representations. To the extent that defendant does so argue, however, that argument fails. Plaintiffs alleging fraudulent misrepresentation must establish only that their reliance was justifiable, and need not conduct due diligence. See Banque Franco-Hellenique De Commerce Int'l v. Christophildes, 106 F.3d 22, 27 (2d Cir. 1997) (necessary standard of care is "minimal diligence" or diligence sufficient to "negat[e] [plaintiff's] own recklessness").

[5] To support his claim that plaintiffs knew that Ting Fong did not own Nueva Generacion, Vuong relies in part on affidavits submitted by plaintiffs in a related state court action. In that action, plaintiff Tran submitted an affidavit in which he stated that "by the time the Operating Agreement was ready to be signed . . . Jimmy and I knew that Vuong did not actually own . . . Nueva Generacion . . . ." Tran Aff. Ex. J ¶ 8. Similarly, in the same proceeding, Yin affirmed that "[b]y September 5, 2002, when Mr. Vuong and I signed the Operating Agreement, I knew that Mr. Vuong did not *own* most of the 'assets' listed on his original list." Yin Aff. Ex. K ¶ 24. At his deposition in the instant matter, however, Yin testified that when he signed the Operating Agreement he believed Vuong was the owner of Nueva Generacion. Yin Dep. at 53. When confronted with his prior statement in the state action, Yin indicated that although he signed the affidavit, prepared by his attorney, he had trouble understanding some of its provisions. Id. at 59. Similarly, Tran testified that the statement in his state affidavit was "totally wrong. . . . As a matter of fact, [Vuong] actually owned the Mexican company." Tran Dep. at 66. Because of plaintiffs' confusion and their testimony in this case that upon signing the Operating Agreement they believed Vuong owned Nueva Generacion, the court concludes that a question of fact remains.

13

testified that although he asked his lawyer, Ms. Mock, to do a title search to find out who owned Nueva Generacion, she stated that such a search could only be done while she was in Mexico. Yin Dep. at 139.

Because there is a question of fact as to whether Vuong fraudulently represented to plaintiffs that he owned Nueva Generacion, summary judgment on this claim in favor of either party is inappropriate.

C. Conversion (Fourth Claim)

Both parties move for summary judgment on plaintiffs' conversion claim. Plaintiffs allege that a reasonable juror could conclude only that defendant wrongfully diverted plaintiffs' $410,000 investment by using it to buy out his Ting Fong partners. In reply, Vuong alleges that he distributed the $410,000 to his former Ting Fong partners pursuant to an oral agreement with Yin granting him permission to use the money for this purpose. Defendant also alleges that plaintiffs may not maintain their conversion claim because the damages they seek are really for breach of contract.

"'Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'" Swartz v. Capital Liquidators, Inc., 984 F.2d 53, 53 (2d Cir. 1993) (quoting Meese v. Miller, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (App. Div. 4th Dep't 1981)). To succeed on their motion, plaintiffs must establish that no reasonable fact-finder could conclude that they gave Vuong permission to use $410,000 of their investment in J&S to buy out his Ting Fong partners. Contrary to plaintiffs' contention, based on the current record, there is a triable issue of fact as to whether such an oral agreement existed.

Vuong admits that he used plaintiffs' investment to pay off the Ting Fong partners, Vuong Dep. at 131, but alleges this was done pursuant to an oral agreement with plaintiffs. At his deposition, Vuong testified that he entered into a verbal agreement with Yin that Yin would contribute $500,000 to pay off the former shareholders of Ting Fong. Vuong Dep. at 196. According to Vuong, it was necessary for Yin to "pay all the shareholders of the existing company" in order for Vuong to contribute Ting Fong's assets to the newly formed entity. Id. at 77. Yin denies agreeing that Vuong could use any portion of plaintiffs' investment in J&S to buy out his former partners in Ting Fong, Yin Aff. ¶ 22, alleging that he believed Vuong to be the sole owner of Ting Fong when they entered their oral agreement to create J & S. Id.

Summary judgment in favor of plaintiffs on this claim is clearly inappropriate. The parties disagree as to whether Vuong had plaintiffs' permission to use their investment to pay off his Ting Fong partners. Whether such an agreement existed is a question for the finder of fact.

Defendant's motion on this claim also fails. Although defendant's argument is all but impossible to comprehend, it appears that he argues that because defendant used plaintiffs' investment for a legitimate business purpose—namely the pay-out of his Ting Fong partners—no reasonable fact finder could conclude that he unlawfully converted those monies. Construing all facts in the light most favorable to plaintiffs, the non-moving party, defendant used plaintiffs' investment, intended for the joint venture, to pay off his own debts to secret partners without plaintiffs' permission. Based on the record before the court, a fact-finder could choose to credit plaintiffs testimony and find that defendant unlawfully converted their investment, intended for J & S, for his personal use. Accordingly, defendant's summary judgment motion must fail.

D.  Fraud (First Claim)

Defendant moves for summary judgment on plaintiffs' fraud claim. Under New York law, "'[a] cause of action for fraud may arise when one misrepresents a material fact, knowing it is false, which another relies on to its injury.'" Gordon & Co. v. Ross, 84 F.3d 542 (2d Cir. 1996) (quoting Graubard Mollen Dannett & Horowitz v. Moskowitz, 86 N.Y.2d 112, 122, 629 N.Y.S.2d 1009, 1014, 653 N.E.2d 1179, 1184 (1995)). The injured party must have relied upon the misrepresentation, and such reliance must have been reasonable or justifiable. Banque Arabe et International D'Investissement v. Maryland National Bank, 57 F.3d 146, 156 (citing Harris v. Camilleri, 77 A.D.2d 861, 431 N.Y.S.2d 65, 68 (2d Dep't 1980)).

As discussed above, defendant insists that plaintiffs did not rely on any representation made by him regarding the ownership of Nueva Generacion. Instead, defendant attests that plaintiffs conducted a month and a half of due diligence regarding Ting Fong's assets prior to contributing any money, and that during that period plaintiffs ascertained the true ownership structure of Nueva Generacion. Accordingly, defendant contends, "the alleged representations by Vuong [that he or Ting Fong owned Nueva Generacion], even if made were not and could not have been relied upon by [p]laintiffs entering into contract with Vuong." Def. Mem. Supp. Summ. J. at 4. Defendant argues that the absence of reliance on any alleged statement by him defeats plaintiffs' claim of fraudulent inducement.

Defendant's argument is undermined by the record, however, which, as discussed above, is inconclusive as to whether plaintiffs relied on representations by Vuong that Ting Fong owned Nueva Generacion. In light of this contested issue of fact, summary judgment is clearly inappropriate.

16

E.   Breach of Contract (Second Claim) and Unjust Enrichment (Fifth Claim)

Finally, defendant moves for summary judgment on the breach of contract and unjust enrichment claims. Defendant's sole argument in support of his motion is that plaintiffs cannot maintain either claim due to the existence of a fully integrated written agreement. As discussed above, however, there is a triable issue of fact as to the validity of the Operating Agreement. Accordingly, its mere existence cannot foreclose plaintiffs' breach of contract and unjust enrichment claims. Were a fact-finder to conclude that the Operating Agreement should be rescinded, plaintiffs would not be precluded from maintaining their claim that Vuong breached the oral agreement. Accordingly, defendant is not entitled to summary judgment on plaintiffs' breach of contract and unjust enrichment claims.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted solely on plaintiffs' claim that the Operating Agreement should be rescinded due to the parties' mutual mistake and is denied in all other respects. Plaintiffs' motion for partial summary judgment is denied. The parties are directed to attend a settlement conference before Judge Matsumoto who, if necessary, will oversee preparation of a pre-trial order.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: August 25, 2005
       Brooklyn, New York

SERVICE LIST:

*Counsel for Plaintiffs*

Douglas Grover
Thompson Hine LLP
One Chase Manhattan Plaza
58th Floor
New York, NY 10005-1401

*Counsel for Defendant*

Morton S. Minsley
225 Broadway, Suite 2100
New York, NY 10007

cc: Magistrate Judge Matsumoto